UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
MAR 18 2014
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ANTHONY WRIGHT,

   Plaintiff,

v.                  Civil No.: 4:13-cv-42

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

   Defendant.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

   Plaintiff Anthony Wright ("Wright") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401-434. Wright has limited his appeal to a claim that the administrative law judge ("ALJ") improperly weighed a Department of Veterans Affairs' ("VA") finding that he was disabled based on the Fourth Circuit's decision in Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).

   After reviewing the entire record, the undersigned finds that despite the Commissioner's arguments that any error is harmless, the new rule announced in Bird mandates remand to permit the ALJ to re-evaluate Wright's VA disability rating. The Court may not substitute its judgment for the ALJ's and determine in the first instance that deviation from the new standard is warranted. In addition, if substantial weight is afforded the VA rating, that may impact the Commissioner's finding on disability. Accordingly, this report recommends that the final

1

decision of the Commissioner be vacated and the matter remanded for further review.

## I. PROCEDURAL BACKGROUND

On October 18, 2010, Wright filed his initial application for disability insurance benefits ("DIB"), alleging disability beginning October 1, 2005. (R. 121-26, 142-47, 148).[1] The Commissioner denied his application initially (R. 61-65) and upon reconsideration. (R. 67-69). Wright then requested an administrative hearing, which was conducted on September 25, 2012. (R. 34-58).

An Administrative Law Judge ("ALJ") concluded that Wright was not disabled within the meaning of the Social Security Act and denied his claim for DIB on October 9, 2012. (R. 14-33). The Appeals Council denied review of the ALJ's decision (R. 1-6), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), on March 22, 2013, Wright filed this action seeking judicial review of the Commissioner's final decision. (ECF No. 1). This case is now before the Court to resolve the parties' cross-motions for summary judgment. (ECF Nos. 9, 13).

## II. FACTUAL BACKGROUND

Wright was born on August 3, 1963, has a high school education, and served as a truck driver in the Marine Corps for approximately 8 years between 1982 and 1990. (R. 41-42, 50, 123). Following his honorable discharge, Wright transitioned into civilian life as a driver, "the only job [he's] ever had," for several different companies. (R. 42-43, 165-67, 200-07). Most recently, Wright was employed by the VA in Martinsburg, West Virginia as a laundry truck driver between September 1, 2005 and March 1, 2010. He was medically released from that position after displaying an inability to maintain a regular work schedule. (R. 269, 504-07).

---

[1] Wright's initial application for DIB indicated an alleged onset date of March 1, 2010 (R. 123, 144), which he later amended without discussion, to October 1, 2005. (R. 148).

While Wright appears to have worked intermittently after March, 2010, "other evidence . . . indicate[s] that his work substantially ended around that time." (R. 19, 251-63). As the record clearly establishes that Wright worked full time for the VA for five years of his period of alleged disability, earning wages "well above [the] SGA level," (R. 19),[2] the following factual summary is limited to a discussion of his conditions after March, 2010.

Much of the medical record relates to Wright's physical impairments, particularly regarding his lower back and knees. He apparently suffers from a lower back injury sustained while he was still in the Marines in March, 1990, during a company basketball game. (R. 404-05, 413). On February 24, 2010, shortly before Wright stopped working with the VA, he treated with VA physician, Dr. Richard Cohen. (R. 413). Dr. Cohen stated that since 1990, Wright has had "intermittent low back pain located across the lower back with frequent diffuse radiation down the right lower extremity associated with numbness and tingling, especially on prolonged sitting and on []rising." Id. Despite previous diagnoses of sciatica and degenerative disk disease, Dr. Cohen opined he was still "able to do his usual job as a truck driver" at that time. Id.

Wright returned to Dr. Cohen on July 20, 2010 for another evaluation of his lumbar spine. (R. 404-05). On examination, Dr. Cohen noted a moderate decrease in pin sensation in the right L5 dermatome and diagnosed Wright with a right lumbar 5 radiculopathy of moderate degree. (R. 405). Dr. Cohen also observed that Wright had been forced to stop work in March, 2010 as a truck driver for the VA "because of a back problem," but still opined he "would be limited to light work on a neurological basis." Id.

VA physician, Dr. Murari Bijpuria, conducted a corresponding spine examination on the same day. (R. 407-09). Although Wright alleged "constant pain," with "moderate response"

---

[2] Full time employment in "substantial gainful activity" precludes a finding of disability under SSA rules. See e.g., 20 C.F.R. 404.1520(b). Wright has not disputed his full time employment through March 2010.

from his medications, he was able to walk without an assistive device and dress and undress himself without difficulty. (R. 407-08). Additionally, an examination of Wright's lumbar spine revealed no localized tenderness, spine deformity, ankylosis, atrophy, weakness or guarding. (R. 408). X-rays, however, disclosed a mild narrowing of L4-5, consistent with mild degenerative disc disease, and a "very mild grade 1 spondylolisthesis L4-5." (R. 409). Dr. Bijuria diagnosed Wright with a chronic lumbar strain and degenerative disk disease of the lumbar spine. (R. 408).

Over the ensuing months, Wright's back condition appears to have continued to degenerate. Although a September 14, 2010 imaging of his lumbar was "unremarkable," (R. 394), one conducted several days later, on September 22, 2010, revealed various findings, including a bulging disc, mild central stenosis, minimal retrolisthesis, disc bulge/osteophyte, and facet disease at L5-S1. (R. 306). Wright also presented to the Martinsburg VA hospital on October 8, 2010, complaining of increased pain and muscle spasms, and was prescribed a cane at that time. (R. 360-61). On December 8, 2010, Wright's pain was "progressively worse," his gait was antalgic, and he had pain lying in supine. (R. 526). By June, 2011, his condition appears to have improved as he had "mild tenderness" in his lower back and reported needing his cane only during bad weather. (R. 729). In August, 2012, Wright reported "moderate" back pain with no leg numbness or weakness and "fair symptom control," though he did suggest his symptoms were worsening. (R. 783).

Wright also suffers from severe degenerative arthritis in his knees. An MRI taken of his right knee in February 2010 revealed knee arthrosis, medial meniscus degeneration, a modest effusion, and a small Baker's cyst. (R. 305). During a July 20, 2010 exam, Wright's upper and lower extremities were rated at 5/5, his gait and tandem gait were normal, and he did not use or require any sort of assistive walking device. (R. 405). On October 18, 2010, however, Wright

4

sought treatment for "discomfort and or paresthesia in the following areas: sacral, right sacroiliac, right pelvic, right buttock, right posterior leg, right posterior knee, right calf, right ankle, right foot, left sacroiliac, lumbar and right lumbar." (R. 501). Wright rated his discomfort a "6 out of 10" and complained that his symptoms interfered with "almost any movement." Id. The treating physician, Dr. Terry Chambers, opined that Wright's condition was "inadequately controlled at this time," and ordered that Wright remain under active care for management of his condition. (R. 503).

A November 3, 2010 appointment revealed moderate effusion in his right knee. X-rays showed bone-on-bone degenerative joint disease and significant patellofemoral arthritis, and the examining physician determined that Wright "is going to need a right total knee arthroplasty in the near future." (R. 498). During a physical therapy consultation, Wright indicated having pain in his right knee, but was still using no cane or other assistive device. He had an antalgic gait and hyperlordotic spine posture. His physical therapist recommended gentle aerobic exercise every 3 days and continued home-walking, with cane as needed. It is unclear whether Wright followed up with physical therapy. (R. 526-27).

By mid-2011, and after a series of Hyalgan injections in both knees, Wright reported his knees were "actually feeling better." (R. 733). X-rays taken on August 7, 2012, however, revealed severe joint space loss in the medial compartment with "bone on bone appearance" in both knees. (R. 769). A physical exam done the same day noted Wright had "chronic low back pain with worsening over past [the] 3-4 days with radiculopathy from the SI, [and] bilateral knee pain with [right greater than left]." (R. 777). A few days later, on August 10, 2012, Wright presented to Dr. Samir Abdelshaheed with hypertension, hypothyroid, and back pain. Wright complained of moderate, "aching" pain in his midline lower back, exacerbated by prolonged

standing and prolonged sitting. (R. 783). He had laxity in his right knee, and 4/5 right knee strength, but otherwise appeared to be in no acute distress. (R. 784). The remaining record is silent as to whether Wright pursued further knee treatment or surgery.

With regard to his mental impairments, the record indicates Wright has a history of depression, PTSD, and substance abuse.[3] During a comprehensive examination conducted on June 16, 2010 by a VA psychiatrist, Wright displayed "moderate irritability," a moderately depressed mood, and irregular eye contact. (R. 412). However, he also appeared logical, coherent, and exhibited a goal-oriented thought process. His insight and judgment were considered "adequate." Id. On discharge from an inpatient treatment program for PTSD and substance abuse on August 20, 2010, Wright was described as "cooperative," with a good mood, and no "delusional thinking." (R. 431). Indeed, his only limitations were a limited insight and slightly restricted affect. Id.

By September 2010, however, Wright was admitted to the VA Emergency Room with depression, anger, and suicidal ideation. (R. 334). After a 24-hour stay, Wright signed out against medical advice. (R. 336). He was hospitalized again, however, from September 28 to October 2, 2010 for similar symptoms. (R. 330). He was admitted to psychiatric services, participated in group therapy, and once his medications were adjusted, he "showed a positive response with progressive improvement in his mood [and] affect." (R. 331-32). On discharge, Wright's condition was stable and he was considered competent. (R. 332). The records from several follow-up appointments in October 2010 indicate Wright demonstrated an overall normal mental health. (R. 338, 351-52, 354, 370-72).

Dr. Tanya S. Khazan, a staff psychiatrist with the VA, evaluated Wright's medications on December 14, 2010. (R. 674-75). She observed Wright was "initially a bit irritable" and

---

[3] Wright has a "longstanding history of cocaine abuse along with alcohol dependence" dating from 1992. (R. 427).

"slightly defensive," but eventually became "engaged" and "appropriate." (R. 675). While she considered him mildly depressed, Dr. Khazan believed Wright to be invested in his treatment and health. Id. He had a restricted affect and no gross cognitive deficit. Id. By December 28, 2010, Dr. Khazan noted that Wright was "much calmer, more open and pleasant," and had a neutral mood. (R. 672). His thoughts were clear and coherent and he seemed to be "more stable." (R. 672-73).

Wright participated in several mental health group counseling sessions in June and July, 2011. (R. 689-90, 716-17, 725-26, 730-31, 732-33). During two examinations in July 2011, though, Wright again displayed mood and affect abnormalities, and also admitted to having relapsed by using alcohol and crack cocaine. (R. 713, 692). By June 2012, Wright's mental status remained relatively the same – a depressed mood, but otherwise normal behavior. (R. 700).

In light of what appears to be a history of prolonged physical and mental impairments, the VA ultimately granted Wright "individual unemployability," effective June 16, 2010, for his service-connected conditions.[4] (169-70). It should be noted that while much of the medical record documents the physical and mental impairments presumably underlying the VA's ultimate decision in Wright's case, the actual Rating Decision is not part of the record which was before the ALJ. The rating is summarized, but the attachment, which would have provided a "detailed explanation of [the VA's] determination, the evidence considered, and the reasons for [the] decision," was not included. (R. 170).

In addition to the medical evidence, Wright testified at the hearing on September 25,

---

[4] Wright's service-connected conditions include mood disorder, NOS, degenerative disc disease of the lumbosacral spine/chronic lumbar strain, pseudofolliculitis barbae, right L5 radiculopathy of mild to moderate degree, and bilateral hearing loss. (R. 169). His overall rating was 80% with individual unemployability effective June 16, 2010. (R. 170).

7

2012, that while he had a history of drug and alcohol abuse, he was no longer using them, attended weekly Narcotics Anonymous meetings, and had been clean for a little over a year with no relapses. (R. 45-46). While he claims he does not drive unless he "really [has] to," Wright admits driving short distances "maybe twice a week to the VA." (R. 43-44). He described an inability to walk long distances, and uses the cane prescribed by the VA "pretty much every time" he leaves his house. (R. 47). Wright also testified he cannot stand longer than a "couple of minutes" without getting spasms in his lower back, he does not lift anything, and the most strenuous thing he does is standing up. (R. 47, 51). His social life, outside of his NA meetings, is limited to seeing his mom once a week. (R. 53).

The ALJ also elicited testimony from a vocational expert who stated that an individual of Wright's age and education who is limited to light work with a sit/stand option and no pushing or pulling against any resistance with the lower extremities, including foot controls, as well as simple, routine, and repetitive tasks with only occasional interaction with the public and co-workers, could perform the jobs of office helper, assembler of small products, unskilled office clerk, or a surveillance system monitor. (R. 55 – 56). The vocational expert further testified that a person with the same limitations who also required unscheduled breaks throughout the 8-hour workday could not work. (R. 56).

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this

9

definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining

physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### A. The ALJ's Decision

In this case, after first finding that Wright meets the insured status requirements of the Social Security Act through December 31, 2015, (R. 19), the ALJ made the following findings under the five part analysis: (1) the ALJ found that Wright had engaged in substantial gainful activity between October 1, 2005 – the alleged onset date – and March 1, 2010, after which he had not engaged in substantial gainful activity; (2) Wright had severe impairments of degenerative disc disease of the lumbar spine, sciatica, bilateral knee disorders, obesity, affective disorder, post-traumatic stress syndrome, and history of cocaine and alcohol abuse; (3) his combination of impairments did not meet the severity of one of the listed impairments in Appendix 1; and (4) Wright had the RFC to perform light work with additional limitations.[5] Finally, although the ALJ concluded that Wright could not perform his past relevant work, he did identify jobs which exist in significant numbers in the national economy which Wright could perform. (14-33).

In his motion for summary judgment, Wright assigns only one error by the ALJ which he claims requires remand. Specifically, he claims the ALJ failed to properly weigh the VA finding that he was completely disabled. The Commissioner vigorously opposes reward, arguing that this Court can conclude from the record that the weight assigned to Wright's VA rating was not

---

[5] Specifically, Wright required a sit/stand option every 30 minutes, could perform only occasional postural activities, no pushing or pulling "against resistance with the lower extremities," and was unable to operate foot controls. Further, "[h]e is limited to simple, routine, repetitive tasks, with no more than occasional public and co-worker interaction. He also requires a stable work environment, defined as little, if any, change in the work process from day to day." (R. 22).

11

error, and alternatively, that any error was harmless. For the reasons set forth in detail below, this report concludes that a post-hearing change in Fourth Circuit precedent mandates remand for the ALJ to perform a more detailed analysis of Wright's VA disability rating. The new requirement to afford his VA rating "substantial weight," or justify a decision to afford it less weight, requires remand in this case in light of the deterioration of Wright's condition after 2010, the restrictive RFC found by the ALJ, and the other evidence in the case supporting his conclusion that Wright was not disabled.

> B. **The Commissioner's final decision did not adequately evaluate evidence of the VA's prior finding that Wright was completely disabled in light of new Fourth Circuit precedent requiring that the VA's finding be given "substantial weight."**

At the time of the hearing before the ALJ, the VA had found Wright disabled based on medical and other evidence establishing "individual unemployabilty." Though the ALJ had access to extensive VA medical records, he gave little weight to the VA's disability rating because "[it] does not contain substantive medical explanations of the disability determination[], and because the standards for determining disability by [the VA] differ[s] from the sequential evaluation process utilized here." (R. 26).

Social Security regulations require the ALJ to consider decisions by other governmental agencies related to the claimant's disability. Although not binding, the regulations suggest that the ALJ should "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." Williams v. Astrue, No. 5:11-CV-286-FL, 2012 WL 3240467, at *9 (E.D.N.C. Apr. 4, 2012) (unpublished) (quoting SSR 06-3P). In this case, the ALJ's explanation was commensurate with the evidence in the record before him concerning the VA's determination, and Fourth Circuit precedent at the time. See Williams, 2012 WL 3240467 at *9; Barnett v. Astrue, No. 3:10-CV-1316, 2012 WL 75046,

at *16 (S.D. W. Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA determination is entirely reasonable.").

After the ALJ's decision, however, the Fourth Circuit decided Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012). The new opinion held that the SSA must give "substantial weight" to a VA disability rating. Id. at 343. Like Williams, the Bird opinion acknowledged that the SSA and VA apply different standards, but also noted that both "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and both require extensive medical documentation. Id. As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other." Id. The opinion also recognized, however, that the "SSA employs its own standards for evaluating a claimant's alleged disability, and [] the effective date of coverage . . . under the two programs will likely vary." Id. As a result, even under the new rule announced in Bird, the Commissioner may give less weight to a VA rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." Id.

Wright's Motion for Summary Judgment argues that the ALJ should be required to afford "substantial weight" to the VA's disability determination, "and if not[,] [provide] an explanation as to why there is clear evidence to deviate from doing so." (ECF No. 10 at 1). Accordingly, he argues that Bird requires remand. Id. The Commissioner contends that the ALJ already afforded careful consideration to the VA's disability rating and clearly demonstrated the reasons for giving it little weight. Specifically, she argues, Social Security regulations employ drastically different standards than the VA's regulations, and further, the VA letter was "unsupported by substantive medical explanation[s] and contradicted by [the] opinions of the same VA physicians

13

who completed the underlying compensation and pension examination." (ECF No. 14 at 14-17). Because "an ALJ may give less weight to the VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate," Bird, 699 F.3d at 343, the Commissioner maintains that the ALJ acted appropriately in rendering his decision, and further, that any remand would not change the ultimate outcome of the case.

It is true that the ALJ carefully evaluated all of the medical evidence and considered the VA's rating to the extent the evidence presented it. However, his analysis was based on the law as it existed before the Fourth Circuit addressed "the precise weight that the SSA must afford to a VA disability rating." Bird, 699 F.3d at 343. After carefully reviewing the ALJ's analysis and the record, the undersigned is unable to conclude that the ALJ's analysis after Bird is supported by substantial evidence, or that the ALJ would have reached the same conclusion in light of the new standard.

This is because prior to Bird, the law did not require any specific weight be assigned to the VA's finding. Bird, 699 F.3d at 343 ("We have not previously addressed the precise weight that the SSA must afford to a VA disability rating."). Applying the old precedent, the ALJ in this case gave the VA determination "little weight, both because [it] [does] not contain substantive medical explanations of the disability determination[], and because the standards for determining disability . . . differ from the sequential evaluation process utilized here." (R. 26). The Commissioner, in briefing before this Court, has correctly observed that SSA determinations are based on different rules with different burdens of proof, and thus she argues Bird does not apply because those different standards and different rules demonstrated the reason behind the ALJ's deviation from the VA's decision. But, the ALJ's examination of Wright's VA medical records was not intended to clearly demonstrate the reasons for according the VA's disability

determination little weight for two reasons. First, the ALJ was bound to analyze the medical records in order to make his own assessment of Wright's impairments. Secondly, prior to Bird, the ALJ was not required to begin from the new presumption of "substantial weight." As a result, the opinion does not – and indeed cannot – demonstrate an intention to depart from a standard which did not then exist.

The Fourth Circuit has now made it clear that the ALJ must give the VA's disability determination "substantial weight." See Bird, 699 F.3d at 343. If the opinion does not, then it must be evident from the opinion itself why the ALJ departed from that standard. "[A] court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say." Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009). The reasons cited by the Commissioner in Wright's case – different rules and different standards – would apply to every case and thus cannot be relied upon to avoid scrutiny of the VA's disability decision under Bird's new presumptive standard. Because the ALJ did not know to conduct this analysis, and did not in fact conduct it, the undersigned is unable to determine whether substantial evidence supports the ALJ's conclusion on the weight assigned to Wright's VA rating. Therefore, remand is necessary in order to allow the ALJ to weigh the evidence of Wright's VA rating in accordance with Bird.

With regard to the ALJ's second proffered reason for affording the rating little weight – namely that the VA determination letter was "not supported by a substantive medical analysis," – it bears mention that "Social Security proceedings are inquisitorial rather than adversarial[] [and] [i]t is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits . . . ." Sims v. Apfel, 530 U.S. 103, 111 (2000). Even though the VA's Rating Decision was absent from the record, "sufficient information was included in the record to raise

the issue and trigger the ALJ's duty to develop the record." Herrien v. Astrue, No. 2:11CV560, 2013 WL 1121361, at *9 (E.D. Va. Feb. 21, 2013). Indeed, the ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).

Lastly, the Commissioner's claim that the Court need not remand because "further articulation [of the ALJ's reasons] would not change the outcome of [Wright's] case," is contradicted by the limited RFC the ALJ did establish for him, and significant evidence of Wright's deteriorating physical condition after he stopped work in 2010. "Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." Martin v. Comm'r of Soc. Sec., No. 6:11CV55, 2013 WL 654359, at *5 (W.D. Va. Feb. 1, 2013). The Fourth Circuit made clear in Bird that a VA disability determination "is the type of evidence that must be considered[] under Social Security Ruling 06-03p." Suggs v. Astrue, No. 4:11CV128FL, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013). Accordingly, "it is evidence that 'may have a bearing on [the Social Security] determination or decision of disability.'" Id. (quoting SSR 06-03p, 2006 WL 2329929, at *6). In light of the restrictive RFC the ALJ imposed on Wright, and because the VA disability determination "may have a bearing" on the Social Security determination, the undersigned cannot conclude that the ALJ's analysis of the VA disability determination was harmless error.

This is not to suggest that the ALJ's conclusions on RFC could not be sustained under the new standard. The Fourth Circuit specifically identified the fact that "the SSA employs its own standards for evaluating a claimant's alleged disability" as one ground which may justify deviation from substantial weight. The ALJ may conclude on the evidence presented by

Wright's case, that those different standards are material to Wright's claim for disability and rightly justify departing from the substantial weight presumption. Here, however, the ALJ performed the analysis from a different starting point, and as a result, remand is the appropriate remedy.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY the Commissioner's Motion for Summary Judgment (ECF No. 13), GRANT Wright's Motion for Summary Judgment (ECF No. 11), and vacate the prior decision and remand the case for further consideration in light of the changes in law concerning Wright's disability rating, and its impact on this claim for benefits.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr</u>

v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                  /s/
                                    Douglas E. Miller
                                    United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia

March 18, 2014